**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

**FRANK C. MINVIELLE, LLC**                        **CIVIL ACTION NO. 05-1312**

**VS.**                                                          **MAGISTRATE JUDGE METHVIN**
                                                                    **BY CONSENT OF THE PARTIES**
**ATLANTIC REFINING CO.**
**OXY USA, INC.**
**PACIFIC ENTERPRISES OIL CO.**
**MOSAIC GLOBAL OPERATIONS, INC.**

## MEMORANDUM RULING ON MOTIONS FOR SUMMARY JUDGMENT
*(Rec. Docs. 29, 35, 41, and 51)*

Before the court are four motions for summary judgment filed by defendants Atlantic

Refining Company ("ARCO"), Oxy USA, Inc. ("Oxy"), Pacific Oil Company ("Pacific") and

Mosaic Global Operations, Inc. ("Mosaic") (collectively referred to as "movers").[1]   Plaintiff,

Frank C. Minvielle, LLC filed an opposition and movers filed replies.[2]

### Factual Background

The underlying facts of the case involve an Oil, Gas and Mineral Lease (hereinafter

referred to as the "1961 lease") entered into on September 28, 1961, by ARCO and Juliet

Bourgeois Delcambre, a previous owner of the land at issue, located in Iberia Parish.  ARCO

subsequently subleased the mineral rights to Callery Properties, Inc., which in turn conveyed its

interest in the land to another company.  The conveyances and subleasing continued, leaving a

long list of oilfield companies having had some connection to the land at issue.  During this time,

movers also operated oil and gas exploration and/or production activities on the property.

---

[1] Rec. Docs. 29, 35, 41 51.

[2] Rec. Docs. 56, 63, 65.

2

In 1998, plaintiff's predecessor, Minvielle & Segura, L.L.C.  purchased the land by Act of Cash Sale ("1998 Act of Cash Sale").  On November 30, 2001, Frank C. Minvielle acquired all ownership of Minvielle & Segura, L.L.C., and shortly thereafter changed its name to Frank C. Minvielle, L.L.C., plaintiff in this action.

### *Previous Litigation - Minvielle I*

On August 27, 2003, plaintiff filed suit in the 16th Judicial District Court alleging that the land in question was contaminated or otherwise damaged by oil and gas exploration and production activities.[3]  Plaintiff named as defendants IMC Global Operations, Inc. ("IMC"), Encana Midstream, Inc., Estis Well Service, L.L.C., and Transok, Inc.  The case, hereinafter referred to as "Minvielle I," was removed to this court on October 15, 2003 pursuant to diversity jurisdiction under 28 U.S.C. §1332.

The only defendant remaining in the case is IMC.[4]  IMC filed a third-party complaint against ARCO, Oxy, Pacific, Edwin Cox, and William Dick, alleging that the third-party defendants were former parties to, or successors-in-interest to the original parties to the 1961 Lease.

IMC filed several motions to dismiss, including one seeking dismissal based on plaintiff's lack of standing to assert contractual claims arising from the 1961 lease and tort claims arising prior to plaintiff's purchase of the land.  Plaintiff responded that it had standing because it was a

---

[3] *See* <u>Minvielle v. IMC et al</u>, 03CV1908, Rec. Doc. 1, Paragraphs 1 and 3.

[4] Estis Well Wervice, L.L.C. was dismissed on February 2, 2002, on a finding of fraudulent joinder.  Transok, Inc. was dismissed on February 20, 2004, for plaintiff's failure to prosecute, and Encana was dismissed with prejudice on plaintiff's own motion.  *See* Minvielle I, 03CV1908, Rec. Docs.  55, 95.

3

third party beneficiary the contract (a stipulation *pour autrui*) and because tort damages can be brought regardless of the timing of the damages.

On October 19, 2004, this court dismissed plaintiff's claims for lack of standing.[5] The ruling was based on a finding that the 1998 cash sale did not confer on plaintiff a specific assignment of rights to recover damages from third parties, nor did the 1961 lease create a stipulation *pour autrui* in favor of plaintiff. The court concluded that plaintiff lacked standing to bring contractual claims arising from the 1961 lease. As to the tort claims, the court also concluded that plaintiff lacked standing because plaintiff was seeking damages arising from operations which occurred prior to plaintiff's acquisition of the land.

Plaintiff filed a motion for reconsideration, arguing that to the extent the 1998 cash sale was deficient, it would be amended to include the transfer of property rights to plaintiff. On January 12, 2005, the court denied plaintiff's motion, noting that plaintiff had not yet amended the 1998 Act of Cash Sale, nor had plaintiff established that such an amendment would properly convey standing.[6] Accordingly, plaintiff's case was dismissed and plaintiff did not appeal the judgment.

### *Instant Suit - Minvielle II*

On June 20, 2005, plaintiff filed suit in the 16th Judicial District Court for the Parish of Iberia, alleging the same claims arising from the 1961 lease as Minvielle I. Plaintiff named as defendants IMC, ARCO, Oxy, Pacific, Pioneer Production Corporation, Edwin L. Cox, and

---

[5] *See* Minvielle I, 03CV1908, Rec. Docs. 104, 105.

[6] *See* Minvielle I, 03CV1908, Rec. Doc. 113.

4

William J. Dick..  Defendants Pioneer, Cox, and Dick were dismissed for plaintiff's failure to

prosecute.  Defendant Mosaic has been substituted for IMC, as its successor in interest.

The petition addresses the previous ruling by this court regarding standing, and the

subsequent Amendment to Act of Cash Sale executed by the Cowans and plaintiff:

15.

> In 2003, plaintiff filed suit against IMC Global Operations, Inc., making claims
> identical to those brought herewith.  That suit, captioned *Frank C. Minvielle,
> L.L.C. v. IMC Global Operations, Inc., et al* was removed to the United States
> District Court for the Western District of Louisiana (Civil Action No. 03-1908).
> In that suit, Magistrate Judge Mildred E. Methvin dismissed plaintiff's suit.  She
> found that the 1998 act of sale from the Cowans to plaintiff did not include a
> specific assignment of rights to recover from third parties for damage done to the
> property prior to plaintiff's acquisition, and therefore plaintiff lacked standing to
> bring a restoration claim in contract or in tort.  *Id.*, Judgment and Memorandum
> Opinion - Ruling on Motions (October 19, 2004).

16.

> By Amendment to Act of Cash Sale the Cowans and plaintiff specified:

> Sellers and each of them declared further that they did by virtue of the Act of Cash
> Sale, dated August 27, 1998, *et seq*., accepted by Purchaser September 18, 1998,
> ... assign, convey, sell, transfer and deliver, less the undivided one-half (½) of the
> oil, gas and other minerals, including sulphur, reserved and retained, all of their
> right, title, claim, interest, demand, surface and subsurface, real, personal and
> mixed, movable, immovable, corporeal and incorporeal, including claims for
> damages suffered by the aforedescribed tracts of land prior to September 18,
> 1998.[7]

The suit filed in the 16th JDC was removed to this court on July 22, 2005.  Subsequently

movers filed the following motions:

---

[7] Rec. Doc. 1.

5

1.      Rule 12(b)(1) Motion Requesting Deference to the Primary Concurrent Jurisdiction of the Louisiana Office of Conservation ("LOC") and the Louisiana Department of Environmental Quality ("DEQ");[8]

2.      Rule 12(b)(1) and/or 12(b)(6) motion to dismiss premature claims;[9]

3.      Rule 12(e) motion for more definite statement;[10]

4.      Motion for compliance with Rule 20 and 21 regarding improper joinder;[11]

5.      Rule 12(b)(7) motion dismiss for failure to join indispensable parties;[12]

6.      Rule 12(b)(6) motion to dismiss for failure to state a claim for lack of standing, nonrecoverable damages, unjust enrichment, and prescription;[13]

7.      Rule 12(b)(6) motion to dismiss claims as barred under res judicata.[14]

The 12(b)(6) motions (Paragraphs 6 and 7 above) were converted to motions for summary judgment since their disposition required reference to documents outside of the complaint.

### *Motion for Summary Judgment*

The Federal Rules of Civil Procedure provide for summary judgment where no genuine issue as to any material fact exists.  Fed.R.Civ.P. 56(c).  The threshold inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.  Anderson v. Liberty Lobby, Inc., 477 U.S.

---

[8] Rec. Docs. 41, 35, 51.

[9] Rec. Docs. 41, 35.

[10] Rec. Docs. 41, 35, 51.

[11] Rec. Docs. 35, 51.

[12] Rec. Docs. 35, 51.

[13] Rec. Docs. 41, 35, 51.

[14] Rec. Docs.  29, 41, 35, 51.

6

242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  Of course, the substantive law will

identify which facts are material.  Id.  All of the evidence must be reviewed in the light most

favorable to the motion's opponent.  Id.  However, the Fifth Circuit has emphasized that

summary judgment should be granted and will be affirmed when the nonmoving party fails to

meet its burden to come forward with facts and law demonstrating a basis for recovery that

would support a jury verdict.  Little v. Liquid Air Corp., 37 F.3d 1069, 1071 (5ᵗʰ Cir. 1994).

*Analysis*

Although a litany of motions have been filed, the initial inquiry must be whether res

judicata applies to this court's previous ruling that plaintiff lacks standing.

**Res Judicata**

Movers argue that the ruling in Minvielle I that plaintiff lacked standing to bring the

claims was a finding that the court did not have subject matter jurisdiction, and is res judicata.

"Federal common law governs the claim-preclusive effect of a dismissal by a federal

court sitting in diversity." Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 121 S.Ct.

1021, 1028, 149 L.Ed.2d 32 (2001).  Accordingly, federal courts apply the law of the forum state,

unless the state's law is incompatible with federal interests, when the basis of the court's

jurisdiction was diversity of citizenship.  American Home Assurance Co. v. Chevron, USA, Inc.,

400 F.3d 265, 271 n. 20 (5ᵗʰ Cir.2005).   "The purpose of both federal and state law on res

judicata is essentially the same; to promote judicial efficiency and final resolution of disputes by

preventing needless re-litigation." Terrebonne Fuel & Lube, Inc. v. Placid Ref. Co., 95-654, p. 11

(La.1/16/96), 666 So.2d 624, 631.

7

In the case at bar, the Court, as a court sitting in diversity, applies Louisiana law to

determine the preclusive effect of its prior judgments.  Under Louisiana law, the phrase "res

judicata" includes both claim preclusion (traditional res judicata) and issue preclusion (collateral

estoppel).  Hudson v. City of Bossier, 33,620, p. 7 (La.App.2d Cir.8/25/00), 766 So.2d 738, 743,

writ denied, 00-2687 (La.11/27/00), 775 So.2d 450.  Claim preclusion precludes the parties from

relitigating matters that were or could have been raised in that action.  Issue preclusion or

collateral estoppel, however, precludes relitigation of an issue that has already been decided by

the court in a previous action.   "Thus, res judicata used in the broad sense has two different

aspects: (1) foreclosure of relitigating matters that have never been litigated, but should have

been advanced in the earlier suit; and (2) foreclosure of relitigating matters that have been

previously litigated and decided." Id.

Louisiana Revised Statute § 13:4231 provides:

Except as otherwise provided by law, a valid and final judgment is conclusive
between the same parties, except on appeal or other direct review, to the following
extent: ...

(2) If the judgment is in favor of the defendant, all causes of action existing at the
time of final judgment arising out of the transaction or occurrence that is the
subject matter of the litigation are extinguished and the judgment bars a
subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in
any subsequent action between them, with respect to any issue actually litigated
and determined if its determination was essential to that judgment.

Thus, "a second action is precluded when all of the following are satisfied: (1) the

judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes

of action asserted in the second suit existed at the time of final judgment in the first litigation;

and (5) the cause or causes of action asserted in the second suit arose out of the transaction or

8

occurrence that was the subject matter of the first litigation." Burguieres v. Pollingue, 843 So.2d
1049, 1053, 2002-1385 (La.. 2003).

### *Valid and final judgment*

Plaintiff asserts that the judgment in Minvielle I cannot form the basis for a res judicata
ruling in this case because the judgment was not a final judgment on the merits of the case, but
rather was a ruling limited to whether there was a deficiency of parties.

The judgment dismissing Minvielle I specifically granted defendants' motions for
summary judgment "for [plaintiff's] failure to state contractual and tort claims due to lack of
standing."[15]

It is well settled that unless a plaintiff has standing, a federal district court lacks subject
matter jurisdiction to address the merits of the case. In the absence of standing, there is no "case
or controversy" between the plaintiff and defendant which serves as the basis for the exercise of
judicial power under Article III of the constitution. Warth v. Seldin, 422 U.S. 490, 498-499, 95
S.Ct. 2197, 2206 (1975). "In essence the question of standing is whether the litigant is entitled to
have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S.
490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Thus, standing must be inquired into as part of
the court's determination of whether it has subject matter jurisdiction. Golding v. Bartholow,
166 F.3d 710 (5th Cir. 1999). If the court finds that it lacks subject matter jurisdiction, it has a
duty to dismiss the case. Fed.R.Civ.P. 12(h)(3). Standing, therefore, determines the courts'
"fundamental power even to hear the suit." Grant ex rel. Family Eldercare v. Gilbert, 324 F.3d

---

[15] Rec. Doc. 105.

9

383, 386 (5th Cir. 2003) *citing* <u>Ford v. Nylcare Health Plans, Inc.</u>, 301 F.3d 329, 333 (5th

Cir.2002).

Thus, under the applicable law, the determination in Minvielle I that plaintiff did not have

standing was equivalent to a finding that the court lacked subject matter jurisdiction.

Although a dismissal for lack of jurisdiction is not a ruling on the merits of the claim,

both Louisiana and federal law hold that the "principles of res judicata apply to jurisdictional

determinations." <u>Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee</u>, 456

U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *see also* <u>Boone v. Kurtz</u>, 617 F.2d

435, 436 (5th Cir.1980) ("Although the dismissal of a complaint for lack of jurisdiction does not

adjudicate the merit[s] so as to make the case res judicata on the substance of the asserted claim,

it does adjudicate the court's jurisdiction, and a second complaint cannot command a second

consideration of the same jurisdictional claims."); <u>Royal Insurance Co. of America v. Quinn-L</u>

<u>Capital Corp.</u>, 960 F.2d 1286 (5th Cir. 1992); <u>Hawthorne v. Couch</u>, 946 So.2d 288, 41,603

(La.App. 2d Cir. 2006) (previous ruling of lack of subject matter jurisdiction given res judicata

effect).

In <u>LoCicero v. Jefferson Parish Dept. of Fleet Management</u>, 722 So.2d 1205, 1209

(La.App. 5th Cir.1998), the court explained that a court's finding of lack of subject matter

jurisdiction can be the basis for res judicata:

> [The] question here is whether a final judgment sustaining an exception of lack of
> subject matter jurisdiction can form the basis of an exception of res judicata in a
> second suit subsequently brought in the same court and based on the same
> transaction or occurrence...
>
> The purpose of the concept of res judicata is to put an end to disputes between the
> same parties which arise from the same transaction or occurrence, see La. R.S.
> 13:4231, Comments-1990(a). While we recognize that a judgment rendered on the

10

> merits by a court without subject matter jurisdiction is generally a nullity, that rule
> cannot be applied to a judgment like the present one where the decision initially
> made was simply whether the court could proceed further with the case. Pursuant
> to La.Code Civ. Pro., Art. 925(A)(6), relating to the declinatory exception of lack
> of jurisdiction over the subject matter of the action, district courts are required to
> exercise their threshold jurisdiction in deciding this issue. It would be anomalous
> indeed were it to be held that a judgment sustaining this exception would be a
> nullity for res judicata purposes in a subsequent suit in the same court. Such a
> ruling would permit endless re-litigation of that issue in direct contravention of
> the policy underlying the concept of res judicata.

Id. at 1209-1210.

Thus, this court's jurisdictional ruling in Minvielle I is a final and valid judgment to which res judicata applies.

### *Parties*

In order for res judicata to apply, there must be a commonality of parties.  Identity of parties does not mean the parties must be the same physical parties.   When one party's interests were adequately represented by another party to an earlier action who may be considered their virtual representative because their interests are closely aligned, their presence in a later litigation does not disrupt the res judicata analysis.  Forum for Equality, PAC v. McKeithen, 893 So.2d 738, 745 (La. 2005) (addition in second suit of three new plaintiffs' whose interests were closely aligned to original plaintiffs did not preclude res judicata application).

In Minvielle I plaintiff sued IMC.  In Minvielle II, plaintiff sued IMC's successor Mosaic, and ARCO, Oxy, and Pacific.  Although ARCO, Oxy, and Pacific were not named as defendants by plaintiff in Minvielle I, they were the subject of a third-party complaint filed by IMC. Although the case was dismissed prior to ARCO, Oxy, and Pacific having made an appearance, they were nonetheless named parties to the litigation.

11

Furthermore, ARCO, Oxy, and Pacific are former parties to, or successors-in-interest to the original parties to the 1961 Lease.  The complaint in Minvielle II states that the defendants are joint tortfeasors and because "the negligence, acts and/or omissions of defendants have collectively contributed to plaintiff's pollution-related property damages, all defendants are solidarily liable for all damages sought in this litigation."

It is clear that, as joint tortfeasors, the defendants were closely aligned and their interests were adequately represented by IMC/Mosaic in Minvielle I.  Accordingly, the requirement for identity of parties is met.

### *Existence of Causes of Action and Same Transaction or Occurrence*

The central inquiry in applying the doctrine of res judicata is whether the cause of action in the second case arises out the same transaction or occurrence that was the subject of the first case.  Blanchard v. ABC Ins. Co., 38,005 p. 5 (La. App 2d Cir. 3/3/04), 867 So.2d 901.   It is clear that the alleged causes of action asserted in Minvielle II existed at the time of Minvielle I and that the causes of actions arise from the same transaction or occurrence.  In fact, the Minvielle II complaint specifically states that claims in both suits are "identical."[16]

Although plaintiff argues that res judicata should not apply because the Amendment to Act of Cash Sale did not exist at the time of the first judgment, the existence of the amendment is irrelevant.  The Act of Cash Sale between plaintiff and the Cowans does not form the basis for the allegations of negligence against defendants, but rather, the causes of action arise from defendants' alleged wrongdoings.  The allegations as to defendants' alleged torts and contractual violations arising from the 1961 lease are the same in both Minvielle I and II.

---

[16] Rec. Doc. 1.

12

Moreover, plaintiff offers no persuasive authority for the proposition that the Amendment to Act of Cash Sale cures the res judicata effect of the prior judgment. Plaintiff cites Perry v. Globe Auto Recycling, Inc., 227 F.3d 950, 953 (7th Cir. 2000) for the proposition that an assignee who lost on his own claims was not precluded from bringing a new action on a claim acquired from another person. Perry, however, is distinguishable from the instant case. Perry did not involve a standing issue, nor does it address the effect of res judicata.[17] The facts of the case at bar are peculiar in that plaintiff lacked standing in Minvielle I and is now attempting to cure the court's previous finding of lack of jurisdiction by filing an amended cash sale purporting to confer standing on plaintiff. Plaintiff has not cited any cases establishing that a dismissal for lack of standing/jurisdiction can be cured by a post-judgment attempt to confer standing to the same party who was previously adjudged to be without standing.

The claims asserted are identical to those asserted in Minvielle I, there is commonality of parties, and the court's jurisdictional ruling in Minvielle I is a final and valid judgment. Accordingly, all requirements for application res judicata are met.

### *Conclusion*

The underlying facts and causes of action in Minvielle II are precisely the same as in Minvielle I, and the parties are virtually the same. Likewise, because the Minvielle I judgment regarding lack of subject matter jurisdiction is res judicata in this case, both cases have the same fatal flaw – lack of subject matter jurisdiction. Plaintiff's after-the-fact creation of a document purporting to create standing does not affect the preclusive effect of res judicata. To allow any other ruling in this case would thwart the fundamental principal of res judicata, i.e., that matters

---

[17] Furthermore, this case is not authoritative because as discussed above, the law applicable to this determination is Louisiana law. Moreover, the case is not a 5th Circuit decision.

13

litigated and finally adjudged are presumed correct and not subject to collateral attack in a

subsequent suit involving the same transaction or occurrence.

Accordingly, defendants' motions for summary judgment based on res judicata are

**GRANTED.**  Because the Minvielle I finding that plaintiff did not have standing has res judicata

effect, the court in the instant case does not have subject matter jurisdiction.  Since dismissal is

proper for lack of subject matter jurisdiction, it is not necessary to address the remaining

motions.  Ruhrgas AG v. Marathon Oil, 526 U.S. 574 (1999);  Alpine View Co. Ltd. v. Atlas

Copco AB, 205 F.3d 208 (5th Cir. 2000).

Signed at Lafayette, Louisiana, on September 6, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)